# CHARLESTON.

GOFF v. MCLAIN et al.

Decided December 8, 1900.

1. JUDGMENT LIEN—*Effect of.*

　　Where a party has a judgment lien upon land, and is proceeding by suit in equity to subject such land to the satisfaction of said judgment, the judgment debtor cannot, by severing the timber trees growing on said land, and selling same to a co-defendant, who has full notice of the pendency of said suit and its object, defeat or displace the lien of said judgment creditor. (p. 446).

2. JUDGMENT LIEN—*Intent to Defeat Void.*

　　The title of one who purchases timber severed from a tract of land during the pendency of a chancery suit brought by a party having a judgment lien thereon to subject the same to the payment of such judgment with notice of such lien, and with intent to defeat the same, is void as to it. (p. 447).

Appeal from Circuit Court, Wood County.

Bill by S. W. Goff against Franklin McLain and others. From a judgment dissolving an injunction and denying a receiver, plaintiff appeals.

*Reversed.*

J. W. VANDERVORT, for appellant.

CALDWELL & WATSON, for appellees.

ENGLISH, JUDGE:

S. W. Goff filed his bill at the September rules, 1897, in the circuit court of Wood County, against Franklin McLain and others for the purpose of subjecting to sale certain real estate of two tracts of land of one hundred and seven and fifteen and three-fourths acres respectively in satisfaction of a judgment for the sum of three hundred and two dollars and forty-two cents with interest and costs, which judgment was rendered in favor of the Second National Bank of Parkersburg against said Goff and McLain, and was duly docketed in the clerk's office of Wood County, and subsequently paid off by said Goff, who was endorser on the note on which said judgment was obtained. Under a decree rendered in said cause said two tracts of land were sold,

Goff becoming the purchaser in both instances, but they did not bring sufficient money to satisfy prior liens and said judgment. Goff then, at the October rules, 1899, filed a petition in the cause stating the facts in regard to the sale of the one hundred and seven acre tract and his purchase of it, and its conveyance to him, and alleging that during the pendency of said suit, the defendants Franklin McLain and Retta McLain acting through said Franklin McLain had cut all of the valuable timber from the land, making it into sawlogs and hauling them off to adjoining tracts, and threatening to have them sawed into lumber; that said Franklin McLain and Retta McLain are wholly insolvent, he prayed that a receiver be appointed to take charge of said timber so removed from the one hundred and seven acre tract, and that McLain and his agents be enjoined from interfering with said timber, which injunction was awarded, and affidavits presented by said Goff in support of his petition, and by those opposing the appointment; which being considered by the court the motion for a receiver was rejected and the injunction awarded the plaintiff dissolved. From said decree this appeal was obtained.

The question here presented is whether the lien of a judgment on timber growing on real estate, created by docketing said judgment in the county in which the land is situated, is released by the severance and sale of such timber to a person who is a party to a chancery suit instituted for the purpose of subjecting said real estate to the satisfaction of the judgment, and who had notice of the lien on said real estate at the time the timber was severed, and at the time it was sold to him.

D. M. McLain was not only a *pendente lite* purchaser but had actual notice that this timber constituted a very valuable portion of the real estate; that Goff was seeking to subject to the satisfaction of his judgment which was a lien not only on the land but upon the timber upon it, and if a *lis pendens* had not been recorded as it was in this case, D. M. McLain was bound to take notice of the lien of said judgment on this timber, and having such notice he could not become an innocent *bona fide* purchaser thereof.

Beach in his valuable work on Modern Eq. Jurisprudence, s. 374, says: "It is a rule of equity long established and acted on, that a purchase of property actually in litigation *pendente lite* although for a valuable consideration and without any express

or constructive notice affects the purchaser in the same manner as if he had such notice, and he will be bound by the judgment in the suit. The rule rests upon the presumption that every man is attentive to what passes in the courts of justice in the State or sovereignty in which he resides, and is founded upon public policy; for otherwise alienations and transfers of title made during the pendancy of a suit might defeat its whole purpose and there would be no end to litigation." This doctrine applies with much greater force where the purchaser is an actual party to the suit. Equity will not permit a defendant in a suit by collusion with his co-defendant to purchase any portion of the subject of litigation and thereby defeat the object of the suit. It often is the case that the timber standing on a tract of land is of as much value as the land itself, and if, during the pendency of a suit to subject such a tract to the satisfaction of a judgment lien the defendant were allowed to sever and sell the timber, great injustice might be done. See Freeman on Judgments vol. 1, s. 193.

Wade in the Law of Notice, s. 338 quotes from Lord Cranworth in *Bellamy* v. *Sabine,* 1 DeG. & J. 566: "It is scarcely correct to speak of *lis pendens* as affecting a purchaser through the doctrine of notice. * * * * It affects him not because it amounts to notice but because the law does not allow litigant parties to give to others, pending the litigation rights to the property in dispute so as to prejudice the opposite party." The same author s. 567 says: "The rule does not operate simply to prohibit litigant parties from transferring their interests. It also prevents others from purchasing while the title is being litigated."

It is contended by counsel for the appellees that the appellant could not claim the logs because he was a purchaser at judicial sale and the land was not sold until long after the timber had been removed from it, and having purchased the land after the timber had been removed from it he took by his purchase the land as it was at the time of sale. Now while it is true that the appellant could only purchase the land in the condition it was, shorn of timber, yet if the timber had remained intact the land might have sold for enough to satisfy the plaintiff's debt; and this serves to illustrate the wisdom of the law which prevents *pendente lite* purchaser from acquiring title to the property he purchased and prevents litigant parties from selling the property

during the pendency of the litigation. When this suit was instituted the trees growing thereon were a part of the land, and as such subject to the judgment lien, and equity will not allow a sale of the timber to a co-defendant to displace and defeat the lien. If this could be done defendants in suits of this character would be constantly removing houses from lots to escape the effect of judgment liens, and so with other species of property that constitute a portion of the realty. See Witners appeal 45 Pa. Reports 455, point 2 of syllabus; 1 Wall U. S. 53, 60; 19 Maine 53; 34 Maine 403.

By section 1 of chapter 74 of the Code it is provided that "Every gift, conveyance, assignment or transfer of or charge upon any estate real or personal * * * * with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void."

In this case, there can be no question as to the fact that D. M. McLain had notice of the fraudulent intent of said Franklin McLain in making the sale of said timber to him.

Wait on Fraudulent Conveyances, s. 24, in response to the question, what interests, then, can be reached by creditors? says:

"Manifestly all tangible property whether real or personal which would have been subject to levy and sale under execution, is susceptible of fraudulent alienation and may be reclaimed and recovered by the creditor where it has been transferred by the debtor with the requisite fraudulent intention." In the same section the author says: "It has long been observed that the principle towards which the highest courts in England and in all the states are more or less rapidly working, is that the entire property of which a debtor is the real or beneficial owner, constitutes a fund which is primarily applicable to the fullest extent to its entire value to the payment of its owners debts." And the courts will not allow any of that value to be withdrawn from such primary application, if they can find any legal or equitable ground on which to prevent such withdrawal."

Where a lien was created on oil leases and other property by attachment, this Court held *(Boulby* v. *DeWitt,* 34 S. E. 219) that, "The title of one who purchases of an attachment debtor property levied on under it with intent to defeat such levy is void."

In the case at bar there can be no question as to the fact that D. M. McLain purchased the logs with full notice of the fraudulent intent on the part of Franklin McLain in cutting and removing the same from the real estate sought to be subjected to said judgment lien; and such being the case, in accordance with the authorities above cited, the sale was imperative, and he acquired no title thereto. My conclusion is that the circuit court erred in refusing to appoint a receiver to take charge of said logs, in dissolving said injunction and in dismissing the plaintiff's petition. The decree is reversed and the cause remanded.

*Reversed.*